O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS HAMILTON, an individual, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>GENESIS LOGISTICS, INC., a Delaware corporation,<br><br>    Defendants. | Case No. CV 13-01848 DDP (VBKx)<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>[Dkt. No. 15] |

**I. Background**

Defendant Genesis Logistics, Inc. ("Genesis") is a logistics and forwarding company incorporated in Delaware. (First Amended Complaint ("FAC") ¶ 1.) Plaintiff Curtis Hamilton ("Plaintiff"), a California citizen, was employed by Genesis as a "Transportation Supervisor" in Fullerton, California. (Id. ¶ 4 and Ex. "A.")

Plaintiff alleges that while employed by Genesis, he was classified as an exempt employee and was paid a set salary. (Id. ¶¶ 14, 15.) Plaintiff alleges that, as transportation supervisor, he had no authority to hire and fire other employees, nor did he

exercise discretion or independent judgment as part of his job. (Id. ¶ 15). He oversaw the work of subordinate truck drivers, but the supervision was limited in scope and took up less than half of his work time. (Id.) In addition, he was required to perform manual labor, such as moving inventory, loading trucks, cleaning, driving trucks, and filing forms related to delivery. (Id.) Plaintiff alleges that Genesis intentionally misclassified him as an exempt employee in order to avoid paying him overtime and missed meal periods despite Genesis's ability to compensate him. (Id. ¶¶ 59-60.)

Plaintiff worked on varying shifts and typically worked more than eight hours a day and/or more than forty hours per week as an employee of Genesis. (Id. ¶ 16.) However, because of the misclassification, Genesis failed to pay Plaintiff overtime compensation for the hours he worked in excess of eight hours in a workday and/or forty hours in a workweek. (Id. ¶ 41.) In addition, Plaintiff alleges that while he was employed by Genesis, Genesis did not provide him with any written statement showing the total hours he had worked or the wages he had earned for each payment of wages. (Id. ¶¶ 17, 45.)

Plaintiff further alleges that Genesis failed to provide uninterrupted meal periods because, as a transportation supervisor, Plaintiff was required to be always "on call." (Id. ¶¶ 18, 50.) Genesis failed to compensate Plaintiff for the missed meal breaks. (Id. ¶ 50.) Plaintiff also alleges that he did not receive or was prevented from taking legally mandated rest breaks, and Genesis did not compensate Plaintiff for the missed rest breaks. (Id. ¶¶ 19,

55.)  Plaintiff asserts these claims on behalf of at least 150 Transportation Supervisors.  (Id. ¶ 25.)

On August 2, 2012, Plaintiff gave written notice of the alleged violation to Genesis via certified United States mail pursuant to Labor Code § 2699.3.  (Id. Exh. A.)  On the same day, Plaintiff provided written notice to the California Labor and Workforce Development Agency ("LWDA") via certified mail .  (Id. Exh. B.)

Genesis claims that it was not aware that Plaintiff had contacted the LWDA because Plaintiff did not provide it with a copy of the cover letter that was sent to the LWDA.  (Mot. at 1-2.)  The written notice did not mention that Plaintiff intended to pursue the claims in a class representative capacity.  (Id. at 2.)

**II. Legal Standard**

A complaint will survive a motion to dismiss under Rule 12(b)(6) when it contains "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth."  Id. at 679.  In other words, a pleading that merely

3

offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 664. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555-56. "Determining whether a complaint states a plausible claim for relief" is a "context-specific" task, requiring "the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

**A. Motion to Dismiss or Strike Class Allegations**

Defendant asserts that Plaintiff's class claims should be dismissed or stricken because they are based on conclusory assertions rather than foundational facts that support his position that a class action is appropriate. The court disagrees and finds that Plaintiff has adequately pleaded facts sufficient to state a claim under Rule 23 of the Federal Rules of Civil Procedure.

**1. Numerosity**

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. Rule 23(a). "In determining whether under Rule 23(a)(1), joinder of all members is impracticable, courts have held that the plaintiff need not show that it would be impossible to join every class member. Additionally, there is no specific number cut-off, as

the specific facts of each case may be examined. Courts have not required evidence of specific class size or identity of class members to satisfy the requirements of Rule 23(a)(1)." <u>Cervantez v. Celestica Corp.</u>, 253 F.R.D. 562, 569 (C.D. Cal. 2008)(internal citations and quotation marks omitted).

Plaintiff alleges that "due to the number [of] employees as well as facilities," he "believes that the total number of Class members is at least . . . over 150." (FAC ¶ 25.) Defendant does not challenge this figure with any evidence. The only potential challenge to numerosity that the court can discover is the Defendant's description of the putative class as "broad and amorphous" because it incorporates individuals whether they "worked before or after Plaintiff, at different facilities from Plaintiff . . ., under different management, and with varying job duties and responsibilities." (Mot. at 7.) However, these assertions do not go to numerosity but to commonality. The court finds that Plaintiff has stated a claim for numerosity.

**2. Commonality**

Rule 23(a) also requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. Rule 23(a). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998). Indeed, "[e]ven a single [common] question will do," so long as that question has the capacity to generate a common answer "apt to drive the resolution of the litigation." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S.Ct. 2541, 2551, 2556 (2011) (internal quotation marks omitted).

5

Defendant asserts that Plaintiff has failed to allege "that there are common business practices or factual patterns that the members of the Classes each experienced." (Mot. at 8 (internal quotation marks and alterations omitted).) According to Defendant, Plaintiff has not presented "a single factual or foundational allegation . . . establishing . . . the commonality element of Rule 23." (Reply at 4.) However, Plaintiff alleges nine separate common questions of law and fact, including whether the member of the Class were misclassified, whether Defendant failed to provide meal periods and rest periods, and whether Defendant failed to provide accurate itemized wage statements. (FAC ¶ 32.) With respect to the misclassification question, for instance, Plaintiff pleaded that he and the other putative class members "had no authority to hire and fire other employees, nor did they exercise discretion or independent judgment as part of their jobs. They oversaw the work of subordinate truck drivers, but such supervision was limited in scope and took up less than half of any shift. Moreover, Class Plaintiff and the other members of the Classes were required to perform manual labor as part of the production of Defendants, including but not limited to, moving inventory, loading trucks, cleaning, driving trucks, and filing forms related to delivery." (FAC ¶ 15.)

The court finds that the allegations including those in ¶ 15 are factual allegations sufficient to state a claim for commonality. The question of whether Transportation Supervisors were misclassified as supervisors, for instance, is a question common to the class that is "apt to drive the resolution of the litigation." Dukes, 131 S.Ct. at 2556.

### 3. Typicality

Rule 23(a) also requires Plaintiff to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. To be typical, a class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982)(internal citation and quotation marks omitted).

Defendant argues that "Plaintiff does not allege in the FAC that he has worked at any other facility operated by Genesis, that he has any knowledge regarding the individuals working as 'Transportation Supervisors in facilities other than Fullerton, or that he has knowledge of any aspect of the employment conditions of any 'Transportation Supervisors' employed by Genesis before and after his brief tenure with Genesis." (Reply at 5.) However, as discussed above with respect to commonality, Plaintiff has alleged the common injury of misclassification, denial of meal breaks, etc. These allegations are sufficient to state a claim for Plaintiff's typicality, since the common question of law or fact regarding misclassification, for instance, would result in the injury, shared with the class, of undercompensation and the interest, shared with the class, of obtaining compensation.

The court finds that Plaintiff's allegations are sufficient to state a claim for typicality.

///

        **4. Adequacy**

Defendant does not appear to challenge Plaintiff's pleading of the adequacy of representation, and the court finds that Plaintiff's representations in ¶ 31 of the FAC are sufficient to state a claim for adequacy.

**B. PAGA Claim**

        **1. Notice to Genesis**

One of the requirements under the Private Attorneys General Act of 2004 ("PAGA") before a civil action may commence is "[t]he aggrieved employee or representative shall give written notice by certified mail to the Labor and Workforce Development Agency and the employer of the specific provisions of this code alleged to have been violated, including the facts and theories to support the alleged violation." Cal. Labor Code 2699.3(a)(1). Defendant asserts that Plaintiff's PAGA claim should be dismissed because "the notice indicating that Plaintiff intended to pursue a PAGA action was sent solely to the [Labor and Workforce Development Agency ("LDWA")], with a demand letter related to Plaintiff's individual claims sent to Genesis." (Mot. at 11.)

Plaintiff responds that the two letters were virtually identical, and though the letter to Genesis did not directly reference the letter to the LDWA, it did note in the second sentence of the letter that it was contacting Defendant "[i]n accordance with Labor Code § 2699," which concerns civil penalties to be assessed and collected by the LWDA in actions brought by aggrieved employees. (FAC, Exh. A.)

Defendant does not address this reference to the Labor Code. Defendant instead maintains that Plaintiff was required to send

Defendant the letter submitted to the LWDA.  Defendant contends that the purpose of such a letter is to put the employer on notice that the LWDA has been contacted, which is important because the employer then has 33 days to correct any deficiencies identified in the notice.  See Cal. Labor Code § 2699.3(c)(1).

Defendant cites no cases, nor has the court discovered any, that support this interpretation of the requirements of § 2699.3(a)(1).  Instead, Defendant cites the Senate Floor Analysis which explains that the amendment to PAGA requiring administrative exhaustion was intended to "'give employers an opportunity to cure less serious violations'" and to "'protect[] businesses from shakedown lawsuits, yet ensurin[ing] that labor laws protecting California's working men and women are enforced.'"  Dunlap v. Superior Court, 142 Cal.App.4th 330, 339 (quoting Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 1809 (2003-2004 Reg. Sess), as amended July 27, pp.5-6).  The court agrees that the purpose of the administrative exhaustion requirement was to require notice to the employer so the employer could rectify the violation without litigation.  The issue here is not the purpose of the requirement but instead whether the employer, Defendant, in fact received sufficient notice of the violation through Plaintiff's letter, which was virtually identical to the letter sent to the LDWA and which referenced the Labor Code section concerning PAGA violations and the requirement of notifying the LDWA.

The court finds that Plaintiff has met the exhaustion requirement.  Nothing in the statute requires that Plaintiff send an identical letter to the employer and the LDWA, to refer to the

9

letter sent to the LDWA in the letter to the employer, or to inform the employer of its obligations under § 2699.3(c)(2)(A). The administrative exhaustion requirement is intended to protect businesses by putting them on notice of violations such that they can remedy those violations without litigation; the letter Plaintiff sent to Defendant states the violations and indicates which sections of the Labor Code Defendant allegedly violated. The court declines to read into § 2699.3 any additional requirements that would nullify Plaintiff's good faith attempt to administratively exhaust its PAGA claims by meeting the statute's requirements.

**2. "Representative" PAGA Action**

Defendant also asserts that Plaintiff's attempt to administratively exhaust his PAGA claim was deficient because he did not indicate that he was bringing claims on a representative basis, but only discussed his individual claims. Because of this, Defendant asserts, Plaintiff did not provide "adequate notice of the 'facts and theories' supporting his allegations of Labor Code violations, such that his PAGA claim is barred as a matter of law." (Reply at 8.) Defendant cites cases elaborating the "facts and theories" requirement of the notice letter, but none of them addresses whether the failure to discuss class claims constitutes a failure to provide notice of "facts and theories." See Alcantar v. Hobart Serv., ED CV 11-1600 PSG, 2013 WL 228501 (C.D. Cal. Jan. 22, 2013)("the closest that Plaintiff comes to making a factual allegation in the letter is to allege a failure 'to provide off-duty meal periods and to pay compensation for work without off-duty meal periods to its California employees.'") and Soto v.

10

Castlerock Farming & Transp. Inc., CIV-F-09-0701 AWI, 2012 WL 1292519 (E.D. Cal. Apr. 16, 2012) reconsideration denied, CIV-F-09-0701 AWI, 2013 WL 1222055 (E.D. Cal. Mar. 25, 2013)(quoting Archila v. KFC U.S. Properties, Inc., 420 Fed. Appx. 667, 669 (9th Cir. 2011) ("The demand letter merely lists several California Labor Code provisions Archila alleges KFC violated and requests that KFC conduct an investigation.").

An action to recover civil penalties under PAGA is "fundamentally a law enforcement action designed to protect the public and not to benefit private parties." Arias v. Superior Court, 46 Cal. 4th 969, 986 (2009) (quoting People v. Pacific Land Research Co., 20 Cal. 3d 10, 17 (1977)). A plaintiff may not bring the PAGA claim as an individual claim, but "as the proxy or agent of the state's labor law enforcement agencies." Reyes v. Macy's, Inc., 202 Cal.App.4th 1119, 1123 (2011)(quoting Arias, 46 Cal. 4th at 986. "[T]he PAGA statute does not enable a single aggrieved employee to litigate his or her claims, but requires an aggrieved employee on behalf of herself or himself *and* other current or former employees to enforce violations of the Labor Code by their employers." Urbino v. Orkin Services of California, Inc., 882 F. Supp. 2d 1152, 1161 (C.D. Cal. 2011) (internal citations and quotation marks omitted) (emphasis in original). In addition, the PAGA statute awards civil penalties to the aggrieved employees as a whole. Id.; Cal. Lab. Code § 2699(i). The statute therefore contemplates a common group action with civil penalties being awarded to the entire group. Urbino, 882 F. Supp. 2d at 1161.

Further, the judgment in a PAGA action is binding "not only on the named employee plaintiff but also on government agencies and

11

any aggrieved employee not a party to the proceeding." <u>Arias</u>, 46 Cal. 4th at 985.  As such, because a PAGA claim is necessarily a representative claim, it follows that plaintiffs need not indicate that they are bringing the PAGA claims on a representative basis. <u>See</u> <u>Cardenas v. McLane FoodServices, Inc.</u>, 796 F. Supp. 2d 1246, 1259-60 (C.D. Cal. 2011) (holding that although plaintiffs are required under PAGA to give notice of the "facts and theories to support the alleged violation," plaintiffs are not required to name all aggrieved employees.  "Indeed, bringing claims on behalf of other aggrieved employees is the very premise of PAGA.").

The court finds that in order to exhaust administrative remedies, a plaintiff need not indicate that he intends to file a class action.

**C. Motion to Transfer**

Defendant moves for the action to be transferred to the Southern Division of the Central District of California.  Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The court agrees, and Plaintiff does not dispute, that the action could have been brought in the Southern Division.  The issue is whether the convenience of the parties and witnesses is such that the court should disrupt Plaintiff's choice of forum.

"[U]nless the balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed."  <u>Sec. Investor Prot. Corp. v. Vigman</u>, 764 F.2d 1309, 1317 (9th Cir. 1985) (citing <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S.

12

501, 508 (1947).)  In putative class actions, a plaintiff's choice of forum is accorded less weight. Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987).

A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  The court may consider: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).

"[V]enue is primarily a matter of convenience of litigants and witnesses." Denver & R. G. W. R. Co. v. Bhd. of R. R. Trainmen, 387 U.S. 556, 560 (1967).  The convenience of non-party witnesses is often the most important factor in determining whether a transfer under § 1404 is appropriate. See also Allstar Mktg. Group, LLC v. Your Store Online, LLC, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009).

Defendant argues that the action should be transferred to the Southern Division because the majority of the evidence and witnesses in this case is located in Orange County, and because Defendant does not have operations in Los Angeles.  Plaintiff

13

presents a declaration indicating that the difference in distance from Defendant's Fullerton facility to the Central District courthouse was 23.34 miles, with an estimated 30 minutes of travel time. (Decl. Kashfian ¶ 2.) The distance from the Fullerton Facility to the Southern Division courthouse, in contrast, was at least 11.78 miles. (Id. ¶ 4.)[1] The court finds that this difference of approximately 12 miles means that the increase in the level of convenience for witnesses is de minimis and insufficient to disrupt the Plaintiff's choice of forum, even when giving that choice less weight because the action is a class action. The fact that Defendant has no operations in Los Angeles, the neighboring county, likewise has only minimal significance and does not change the court's finding.

///
///
///

---

[1] Defendant objects to this declaration as irrelevant, lacking foundation and personal knowledge, improper opinion of a lay witness, hearsay, and a violation of the best evidence rule. (Evidentiary Objections to the Decl. of Robert Kashfian . . . .). These objections are OVERRULED. Federal Rule of Evidence 201(b)(2) allows the court to take judicial notice of a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The court finds that it can take judicial notice of the distance between Defendant's address in Fullerton, which Defendant does not dispute, and the courthouses in Los Angeles and Santa Ana. In contrast, the court finds that it cannot take judicial notice of the travel time to the courthouses, since traffic in Los Angeles and Orange Counties is too notoriously unpredictable to be "capable of accurate and ready determination" by any source yet to be discovered.

**IV. Conclusion**

For the reasons stated above, the Motion to Dismiss or Strike Class Allegations and the Motion to Transfer are DENIED.

IT IS SO ORDERED.

Dated: June 20, 2013

DEAN D. PREGERSON
United States District Judge

15