1

2

3                                                              O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  CURTIS HAMILTON, an          )  Case No. CV 13-01848 DDP (VBKx)
    individual, on behalf of     )
12  himself and all others       )  **ORDER DENYING MOTION TO DISMISS**
    similarly situated,          )
13                               )  [Dkt. No. 15]
                    Plaintiff,   )
14                               )
         v.                      )
15                               )
    GENESIS LOGISTICS, INC., a   )
16  Delaware corporation,        )
                                 )
17                  Defendants.  )
                                 )
18  _____ )

19  **I. Background**

20       Defendant Genesis Logistics, Inc. ("Genesis") is a logistics

21  and forwarding company incorporated in Delaware.  (First Amended

22  Complaint ("FAC") ¶ 1.)  Plaintiff Curtis Hamilton ("Plaintiff"), a

23  California citizen, was employed by Genesis as a "Transportation

24  Supervisor" in Fullerton, California.  (Id. ¶ 4 and Ex. "A.")

25       Plaintiff alleges that while employed by Genesis, he was

26  classified as an exempt employee and was paid a set salary.  (Id.

27  ¶¶ 14, 15.) Plaintiff alleges that, as transportation supervisor,

28  he had no authority to hire and fire other employees, nor did he

1  exercise discretion or independent judgment as part of his job.

2  (Id. ¶ 15).  He oversaw the work of subordinate truck drivers, but

3  the supervision was limited in scope and took up less than half of

4  his work time.  (Id.)  In addition, he was required to perform

5  manual labor, such as moving inventory, loading trucks, cleaning,

6  driving trucks, and filing forms related to delivery.  (Id.)

7  Plaintiff alleges that Genesis intentionally misclassified him as

8  an exempt employee in order to avoid paying him overtime and missed

9  meal periods despite Genesis's ability to compensate him.  (Id. ¶¶

10  59-60.)

11       Plaintiff worked on varying shifts and typically worked more

12  than eight hours a day and/or more than forty hours per week as an

13  employee of Genesis.  (Id. ¶ 16.)  However, because of the

14  misclassification, Genesis failed to pay Plaintiff overtime

15  compensation for the hours he worked in excess of eight hours in a

16  workday and/or forty hours in a workweek.  (Id. ¶ 41.)  In

17  addition, Plaintiff alleges that while he was employed by Genesis,

18  Genesis did not provide him with any written statement showing the

19  total hours he had worked or the wages he had earned for each

20  payment of wages.  (Id. ¶¶ 17, 45.)

21       Plaintiff further alleges that Genesis failed to provide

22  uninterrupted meal periods because, as a transportation supervisor,

23  Plaintiff was required to be always "on call."  (Id. ¶¶ 18, 50.)

24  Genesis failed to compensate Plaintiff for the missed meal breaks.

25  (Id. ¶ 50.)  Plaintiff also alleges that he did not receive or was

26  prevented from taking legally mandated rest breaks, and Genesis did

27  not compensate Plaintiff for the missed rest breaks.  (Id. ¶¶ 19,

28

1  55.)   Plaintiff asserts these claims on behalf of at least 150

2  Transportation Supervisors.  (Id. ¶ 25.)

3      On August 2, 2012, Plaintiff gave written notice of the

4  alleged violation to Genesis via certified United States mail

5  pursuant to Labor Code § 2699.3.  (Id. Exh. A.)  On the same day,

6  Plaintiff provided written notice to the California Labor and

7  Workforce Development Agency ("LWDA") via certified mail .  (Id.

8  Exh. B.)

9      Genesis claims that it was not aware that Plaintiff had

10  contacted the LWDA because Plaintiff did not provide it with a copy

11  of the cover letter that was sent to the LWDA.  (Mot. at 1-2.)  The

12  written notice did not mention that Plaintiff intended to pursue

13  the claims in a class representative capacity.  (Id. at 2.)

14  **II. Legal Standard**

15      A complaint will survive a motion to dismiss under Rule

16  12(b)(6) when it contains "sufficient factual matter, accepted as

17  true, 'to state a claim to relief that is plausible on its face.'"

18  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl.

19  Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When considering a

20  Rule 12(b)(6) motion, a court must "accept as true all allegations

21  of material fact and must construe those facts in the light most

22  favorable to the plaintiff."  Resnick v. Hayes, 213 F.3d 443, 447

23  (9th Cir. 2000).  Although a complaint need not include "detailed

24  factual allegations," it must offer "more than an unadorned,

25  the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at

26  678.  Conclusory allegations or allegations that are no more than a

27  statement of a legal conclusion "are not entitled to the assumption

28  of truth."  Id. at 679.  In other words, a pleading that merely

3

1  offers "labels and conclusions," a "formulaic recitation of the

2  elements," or "naked assertions" will not be sufficient to state a

3  claim upon which relief can be granted.  Id. at 678 (citations and

4  internal quotation marks omitted).

5      "When there are well-pleaded factual allegations, a court

6  should assume their veracity and then determine whether they

7  plausibly give rise to an entitlement of relief." Id. at 664.

8  Plaintiffs must allege "plausible grounds to infer" that their

9  claims rise "above the speculative level."  Twombly, 550 U.S. at

10 555-56. "Determining whether a complaint states a plausible claim

11 for relief" is a "context-specific" task, requiring "the reviewing

12 court to draw on its judicial experience and common sense."  Iqbal,

13 556 U.S. at 679.

14 **III. Discussion**

15      **A. Motion to Dismiss or Strike Class Allegations**

16      Defendant asserts that Plaintiff's class claims should be

17 dismissed or stricken because they are based on conclusory

18 assertions rather than foundational facts that support his position

19 that a class action is appropriate.  The court disagrees and finds

20 that Plaintiff has adequately pleaded facts sufficient to state a

21 claim under Rule 23 of the Federal Rules of Civil Procedure.

22      **1. Numerosity**

23      The first requirement of Rule 23(a) is that "the class is so

24 numerous that joinder of all members is impracticable."  Fed. R.

25 Civ. P. Rule 23(a).  "In determining whether under Rule 23(a)(1),

26 joinder of all members is impracticable, courts have held that the

27 plaintiff need not show that it would be impossible to join every

28 class member. Additionally, there is no specific number cut-off, as

4

1    the specific facts of each case may be examined. Courts have not

2    required evidence of specific class size or identity of class

3    members to satisfy the requirements of Rule 23(a)(1)." <u>Cervantez</u>

4    <u>v. Celestica Corp.</u>, 253 F.R.D. 562, 569 (C.D. Cal. 2008)(internal

5    citations and quotation marks omitted).

6         Plaintiff alleges that "due to the number [of] employees as

7    well as facilities," he "believes that the total number of Class

8    members is at least . . . over 150." (FAC ¶ 25.)  Defendant does

9    not challenge this figure with any evidence.  The only potential

10   challenge to numerosity that the court can discover is the

11   Defendant's description of the putative class as "broad and

12   amorphous" because it incorporates individuals whether they "worked

13   before or after Plaintiff, at different facilities from Plaintiff .

14   . ., under different management, and with varying job duties and

15   responsibilities."  (Mot. at 7.)  However, these assertions do not

16   go to numerosity but to commonality.  The court finds that

17   Plaintiff has stated a claim for numerosity.

18        **2. Commonality**

19       Rule 23(a) also requires that "there are questions of law or

20   fact common to the class."  Fed. R. Civ. P. Rule 23(a).  "All

21   questions of fact and law need not be common to satisfy the rule.

22   The existence of shared legal issues with divergent factual

23   predicates is sufficient."  <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d

24   1011, 1019 (9th Cir. 1998).  Indeed, "[e]ven a single [common]

25   question will do," so long as that question has the capacity to

26   generate a common answer "apt to drive the resolution of the

27   litigation."  <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S.Ct. 2541, 2551,

28   2556 (2011) (internal quotation marks omitted).

1    Defendant asserts that Plaintiff has failed to allege "that

2  there are common business practices or factual patterns that the

3  members of the Classes each experienced."  (Mot. at 8 (internal

4  quotation marks and alterations omitted).)  According to Defendant,

5  Plaintiff has not presented "a single factual or foundational

6  allegation . . . establishing . . . the commonality element of Rule

7  23."  (Reply at 4.)  However, Plaintiff alleges nine separate

8  common questions of law and fact, including whether the member of

9  the Class were misclassified, whether Defendant failed to provide

10  meal periods and rest periods, and whether Defendant failed to

11  provide accurate itemized wage statements.  (FAC ¶ 32.)  With

12  respect to the misclassification question, for instance, Plaintiff

13  pleaded that he and the other putative class members "had no

14  authority to hire and fire other employees, nor did they exercise

15  discretion or independent judgment as part of their jobs.  They

16  oversaw the work of subordinate truck drivers, but such supervision

17  was limited in scope and took up less than half of any shift.

18  Moreover, Class Plaintiff and the other members of the Classes were

19  required to perform manual labor as part of the production of

20  Defendants, including but not limited to, moving inventory, loading

21  trucks, cleaning, driving trucks, and filing forms related to

22  delivery."  (FAC ¶ 15.)

23    The court finds that the allegations including those in ¶ 15

24  are factual allegations sufficient to state a claim for

25  commonality.  The question of whether Transportation Supervisors

26  were misclassified as supervisors, for instance, is a question

27  common to the class that is "apt to drive the resolution of the

28  litigation."  Dukes, 131 S.Ct. at 2556.

### 3. Typicality

Rule 23(a) also requires Plaintiff to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  Hanlon, 150 F.3d at 1020.  To be typical, a class representative "must be part of the class and possess the same interest and suffer the same injury as the class members."  General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982)(internal citation and quotation marks omitted).

Defendant argues that "Plaintiff does not allege in the FAC that he has worked at any other facility operated by Genesis, that he has any knowledge regarding the individuals working as 'Transportation Supervisors in facilities other than Fullerton, or that he has knowledge of any aspect of the employment conditions of any 'Transportation Supervisors' employed by Genesis before and after his brief tenure with Genesis."  (Reply at 5.)  However, as discussed above with respect to commonality, Plaintiff has alleged the common injury of misclassification, denial of meal breaks, etc. These allegations are sufficient to state a claim for Plaintiff's typicality, since the common question of law or fact regarding misclassification, for instance, would result in the injury, shared with the class, of undercompensation and the interest, shared with the class, of obtaining compensation.

The court finds that Plaintiff's allegations are sufficient to state a claim for typicality.

///

1          **4. Adequacy**

2          Defendant does not appear to challenge Plaintiff's pleading of

3   the adequacy of representation, and the court finds that

4   Plaintiff's representations in ¶ 31 of the FAC are sufficient to

5   state a claim for adequacy.

6          **B. PAGA Claim**

7              **1. Notice to Genesis**

8          One of the requirements under the Private Attorneys General

9   Act of 2004 ("PAGA") before a civil action may commence is "[t]he

10  aggrieved employee or representative shall give written notice by

11  certified mail to the Labor and Workforce Development Agency and

12  the employer of the specific provisions of this code alleged to

13  have been violated, including the facts and theories to support the

14  alleged violation."  Cal. Labor Code 2699.3(a)(1).  Defendant

15  asserts that Plaintiff's PAGA claim should be dismissed because

16  "the notice indicating that Plaintiff intended to pursue a PAGA

17  action was sent solely to the [Labor and Workforce Development

18  Agency ("LDWA")], with a demand letter related to Plaintiff's

19  individual claims sent to Genesis."  (Mot. at 11.)

20         Plaintiff responds that the two letters were virtually

21  identical, and though the letter to Genesis did not directly

22  reference the letter to the LDWA, it did note in the second

23  sentence of the letter that it was contacting Defendant "[i]n

24  accordance with Labor Code § 2699," which concerns civil penalties

25  to be assessed and collected by the LWDA in actions brought by

26  aggrieved employees.  (FAC, Exh. A.)

27         Defendant does not address this reference to the Labor Code.

28  Defendant instead maintains that Plaintiff was required to send

1   Defendant the letter submitted to the LWDA.  Defendant contends

2   that the purpose of such a letter is to put the employer on notice

3   that the LWDA has been contacted, which is important because the

4   employer then has 33 days to correct any deficiencies identified in

5   the notice.  See Cal. Labor Code § 2699.3(c)(1).

6        Defendant cites no cases, nor has the court discovered any,

7   that support this interpretation of the requirements of §

8   2699.3(a)(1).  Instead, Defendant cites the Senate Floor Analysis

9   which explains that the amendment to PAGA requiring administrative

10  exhaustion was intended to "'give employers an opportunity to cure

11  less serious violations'" and to "'protect[] businesses from

12  shakedown lawsuits, yet ensurin[ing] that labor laws protecting

13  California's working men and women are enforced.'"  Dunlap v.

14  Superior Court, 142 Cal.App.4th 330, 339 (quoting Sen. Rules Com.,

15  Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 1809 (2003-

16  2004 Reg. Sess), as amended July 27, pp.5-6).  The court agrees

17  that the purpose of the administrative exhaustion requirement was

18  to require notice to the employer so the employer could rectify the

19  violation without litigation.  The issue here is not the purpose of

20  the requirement but instead whether the employer, Defendant, in

21  fact received sufficient notice of the violation through

22  Plaintiff's letter, which was virtually identical to the letter

23  sent to the LDWA and which referenced the Labor Code section

24  concerning PAGA violations and the requirement of notifying the

25  LDWA.

26       The court finds that Plaintiff has met the exhaustion

27  requirement.  Nothing in the statute requires that Plaintiff send

28  an identical letter to the employer and the LDWA, to refer to the

1 letter sent to the LDWA in the letter to the employer, or to inform

2 the employer of its obligations under § 2699.3(c)(2)(A).  The

3 administrative exhaustion requirement is intended to protect

4 businesses by putting them on notice of violations such that they

5 can remedy those violations without litigation; the letter

6 Plaintiff sent to Defendant states the violations and indicates

7 which sections of the Labor Code Defendant allegedly violated.  The

8 court declines to read into § 2699.3 any additional requirements

9 that would nullify Plaintiff's good faith attempt to

10 administratively exhaust its PAGA claims by meeting the statute's

11 requirements.

12         **2. "Representative" PAGA Action**

13     Defendant also asserts that Plaintiff's attempt to

14 administratively exhaust his PAGA claim was deficient because he

15 did not indicate that he was bringing claims on a representative

16 basis, but only discussed his individual claims.  Because of this,

17 Defendant asserts, Plaintiff did not provide "adequate notice of

18 the 'facts and theories' supporting his allegations of Labor Code

19 violations, such that his PAGA claim is barred as a matter of law."

20 (Reply at 8.)  Defendant cites cases elaborating the "facts and

21 theories" requirement of the notice letter, but none of them

22 addresses whether the failure to discuss class claims constitutes a

23 failure to provide notice of "facts and theories."  See <u>Alcantar v.</u>

24 <u>Hobart Serv.</u>, ED CV 11-1600 PSG, 2013 WL 228501 (C.D. Cal. Jan. 22,

25 2013)("the closest that Plaintiff comes to making a factual

26 allegation in the letter is to allege a failure 'to provide off-

27 duty meal periods and to pay compensation for work without off-duty

28 meal periods to its California employees.'") and  <u>Soto v.</u>

1  Castlerock Farming & Transp. Inc., CIV-F-09-0701 AWI, 2012 WL

2  1292519 (E.D. Cal. Apr. 16, 2012) reconsideration denied, CIV-F-09-

3  0701 AWI, 2013 WL 1222055 (E.D. Cal. Mar. 25, 2013)(quoting Archila

4  v. KFC U.S. Properties, Inc., 420 Fed. Appx. 667, 669 (9th Cir.

5  2011) ("The demand letter merely lists several California Labor

6  Code provisions Archila alleges KFC violated and requests that KFC

7  conduct an investigation.").

8      An action to recover civil penalties under PAGA is

9  "fundamentally a law enforcement action designed to protect the

10  public and not to benefit private parties."  Arias v. Superior

11  Court, 46 Cal. 4th 969, 986 (2009) (quoting People v. Pacific Land

12  Research Co., 20 Cal. 3d 10, 17 (1977)).  A plaintiff may not bring

13  the PAGA claim as an individual claim, but "as the proxy or agent

14  of the state's labor law enforcement agencies."  Reyes v. Macy's,

15  Inc., 202 Cal.App.4th 1119, 1123 (2011)(quoting Arias, 46 Cal. 4th

16  at 986.  "[T]he PAGA statute does not enable a single aggrieved

17  employee to litigate his or her claims, but requires an aggrieved

18  employee on behalf of herself or himself and other current or

19  former employees to enforce violations of the Labor Code by their

20  employers."  Urbino v. Orkin Services of California, Inc., 882 F.

21  Supp. 2d 1152, 1161 (C.D. Cal. 2011) (internal citations and

22  quotation marks omitted) (emphasis in original).  In addition, the

23  PAGA statute awards civil penalties to the aggrieved employees as a

24  whole.  Id.; Cal. Lab. Code § 2699(i).  The statute therefore

25  contemplates a common group action with civil penalties being

26  awarded to the entire group.  Urbino, 882 F. Supp. 2d at 1161.

27      Further, the judgment in a PAGA action is binding "not only on

28  the named employee plaintiff but also on government agencies and

11

1 | any aggrieved employee not a party to the proceeding." Arias, 46

2 | Cal. 4th at 985.  As such, because a PAGA claim is necessarily a

3 | representative claim, it follows that plaintiffs need not indicate

4 | that they are bringing the PAGA claims on a representative basis.

5 | See Cardenas v. McLane FoodServices, Inc., 796 F. Supp. 2d 1246,

6 | 1259-60 (C.D. Cal. 2011) (holding that although plaintiffs are

7 | required under PAGA to give notice of the "facts and theories to

8 | support the alleged violation," plaintiffs are not required to name

9 | all aggrieved employees.  "Indeed, bringing claims on behalf of

10 | other aggrieved employees is the very premise of PAGA.").

11 |     The court finds that in order to exhaust administrative

12 | remedies, a plaintiff need not indicate that he intends to file a

13 | class action.

14 |     **C. Motion to Transfer**

15 |     Defendant moves for the action to be transferred to the

16 | Southern Division of the Central District of California.  Under 28

17 | U.S.C. § 1404(a), "[f]or the convenience of the parties and

18 | witnesses, in the interest of justice, a district court may

19 | transfer any civil action to any other district or division where

20 | it might have been brought."  The court agrees, and Plaintiff does

21 | not dispute, that the action could have been brought in the

22 | Southern Division.  The issue is whether the convenience of the

23 | parties and witnesses is such that the court should disrupt

24 | Plaintiff's choice of forum.

25 |     "[U]nless the balance of factors is strongly in favor of the

26 | defendants, the plaintiff's choice of forum should rarely be

27 | disturbed."  Sec. Investor Prot. Corp. v. Vigman, 764 F.2d 1309,

28 | 1317 (9th Cir. 1985) (citing Gulf Oil Corp. v. Gilbert, 330 U.S.

1   501, 508 (1947).)   In putative class actions, a plaintiff's choice

2   of forum is accorded less weight.  Lou v. Belzberg, 834 F.2d 730,

3   739 (9th Cir. 1987).

4        A motion to transfer venue under § 1404(a) requires the court

5   to weigh multiple factors in its determination whether transfer is

6   appropriate in a particular case.  Stewart Org., Inc. v. Ricoh

7   Corp., 487 U.S. 22, 29 (1988).  The court may consider: "(1) the

8   location where the relevant agreements were negotiated and

9   executed, (2) the state that is most familiar with the governing

10  law, (3) the plaintiff's choice of forum, (4) the respective

11  parties' contacts with the forum, (5) the contacts relating to the

12  plaintiff's cause of action in the chosen forum, (6) the

13  differences in the costs of litigation in the two forums, (7) the

14  availability of compulsory process to compel attendance of

15  unwilling non-party witnesses, and (8) the ease of access to

16  sources of proof."  Jones v. GNC Franchising, Inc., 211 F.3d 495,

17  498-99 (9th Cir. 2000).

18       "[V]enue is primarily a matter of convenience of litigants and

19  witnesses."  Denver & R. G. W. R. Co. v. Bhd. of R. R. Trainmen,

20  387 U.S. 556, 560 (1967).  The convenience of non-party witnesses

21  is often the most important factor in determining whether a

22  transfer under § 1404 is appropriate.  See also Allstar Mktg.

23  Group, LLC v. Your Store Online, LLC, 666 F. Supp. 2d 1109, 1132

24  (C.D. Cal. 2009).

25       Defendant argues that the action should be transferred to the

26  Southern Division because the majority of the evidence and

27  witnesses in this case is located in Orange County, and because

28  Defendant does not have operations in Los Angeles.  Plaintiff

13

1 presents a declaration indicating that the difference in distance

2 from Defendant's Fullerton facility to the Central District

3 courthouse was 23.34 miles, with an estimated 30 minutes of travel

4 time.   (Decl. Kashfian ¶ 2.)   The distance from the Fullerton

5 Facility to the Southern Division courthouse, in contrast, was at

6 least 11.78 miles.   (Id. ¶ 4.)[1]   The court finds that this

7 difference of approximately 12 miles means that the increase in the

8 level of convenience for witnesses is de minimis and insufficient

9 to disrupt the Plaintiff's choice of forum, even when giving that

10 choice less weight because the action is a class action.   The fact

11 that Defendant has no operations in Los Angeles, the neighboring

12 county, likewise has only minimal significance and does not change

13 the court's finding.

14

15

16

17 ///

18 ///

19 ///

20 ────────────────────────

21    [1]Defendant objects to this declaration as irrelevant, lacking
foundation and personal knowledge, improper opinion of a lay

22 witness, hearsay, and a violation of the best evidence rule.
(Evidentiary Objections to the Decl. of Robert Kashfian . . . .).

23 These objections are OVERRULED.   Federal Rule of Evidence 201(b)(2)
allows the court to take judicial notice of a fact that is "capable

24 of accurate and ready determination by resort to sources whose
accuracy cannot reasonably be questioned."   The court finds that it

25 can take judicial notice of the distance between Defendant's
address in Fullerton, which Defendant does not dispute, and the

26 courthouses in Los Angeles and Santa Ana.   In contrast, the court
finds that it cannot take judicial notice of the travel time to the

27 courthouses, since traffic in Los Angeles and Orange Counties is
too notoriously unpredictable to be "capable of accurate and ready

28 determination" by any source yet to be discovered.

**IV. Conclusion**

    For the reasons stated above, the Motion to Dismiss or Strike Class Allegations and the Motion to Transfer are DENIED.

IT IS SO ORDERED.

Dated: June 20, 2013

                             DEAN D. PREGERSON
                             United States District Judge

15